UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - x
IN THE MATTER OF AN APPLICATION        :
OF THE UNITED STATES OF AMERICA        :        SEALED APPLICATION
FOR AN ORDER AUTHORIZING THE           :
USE OF A PEN REGISTER AND A            :        __ Misc. ___
TRAP AND TRACE DEVICE
- - - - - - - - - - - - - - - - - - - 16 MISC 1317

   Michael P. Robotti, an Assistant United States

Attorney for the Eastern District of New York, hereby applies to

the Court for an Order pursuant to 18 U.S.C. §§ 3122 and 3123,

authorizing for a period of 60 days the installation and use of

a pen register and a trap and trace device on: (i) a BlackBerry

Device with PIN: 33338631, with no listed subscriber; (ii) a

BlackBerry Device with PIN: 7bef9adb, with no listed subscriber;

(iii) a BlackBerry Device with PIN: 2BCF446E, with no listed

subscriber; (iv) a BlackBerry Device with PIN: 2C2187D1, (v) a

BlackBerry Device with PIN: 2928EFE2,(vi) a BlackBerry Device

with PIN: 25AE2671, and (vii) a BlackBerry Device with PIN:

7BD69388, with no listed subscriber (collectively, the "SUBJECT

DEVICES"), whose wireless telephone service provider is

BlackBerry Corporation (the "Service Provider" or "BlackBerry").

   In support of this application I state the following:

   1.  I am an Assistant United States Attorney in the

Office of Robert L. Capers, United States Attorney for the

1

Eastern District of New York.  As such, I am an "attorney for the Government" as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure, and therefore, pursuant to 18 U.S.C. § 3122, may apply for an Order authorizing the installation and use of pen registers and trap and trace devices.

2.    The Court has authority to order the installation and use of a pen register or a trap and trace device anywhere in the United States if the Court finds that the attorney for the government has certified to the Court that the information likely to be obtained is relevant to an ongoing criminal investigation.  18 U.S.C. §§ 3122 and 3123.  As the United States Court of Appeals for the Second Circuit has explained, an application for a pen register or trap and trace device

> need only identify the applicant and the investigating law enforcement agency and certify that "the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by that agency."  18 U.S.C. § 3122(b)(2).  The provision was not intended to require independent judicial review of relevance; rather, the reviewing court need only verify the completeness of the certification.

In re United States, 10 F.3d 931, 935 (2d Cir. 1993) (emphasis added); accord In re Applications, 515 F. Supp. 2d 325, 329 (E.D.N.Y. 2007) (explaining "minimal requirement" of Section 3122(b)).

3.    In the traditional telephone context, pen

2

registers captured the destination telephone numbers of outgoing calls, while trap and trace devices captured the telephone numbers of incoming calls. Similar principles apply to other kinds of wire and electronic communications, as described below.

4.    BlackBerry (formerly known as Research in Motion) provides electronic communication services via BlackBerry smartphones that function using both cellular and wireless data connections.  Cellular telephone service is provided to a BlackBerry handheld device by wireless cellular carriers, such as Verizon, Sprint, or AT&T.  SMS text messaging and traditional cellular phone voice communications are provided via a wireless cellular carrier's network.  Other electronic communications services accessible via a BlackBerry device are transmitted via BlackBerry's proprietary infrastructure, including: secure wireless access to the Internet, secure PIN-to-PIN communications from one BlackBerry device to another (via BlackBerry's proprietary infrastructure and explained below), BlackBerry Messenger Communications (a proprietary branded instant messaging service available from BlackBerry and carried on its own infrastructure), email, Internet World Wide Web browsing (web browsing).

5.    A BlackBerry user may engage in PIN-to-PIN or

Peer-to-Peer communications between BlackBerry smartphones.  A PIN, Personal Identification Number, is a unique eight-digit alpha-numeric identifier assigned to each handheld BlackBerry device.   When using the PIN-to-PIN method to communicate, instead of sending a message to an email address, the message is routed within BlackBerry's network infrastructure via the BlackBerry Internet Server (BIS) from one BlackBerry handheld device to another, bypassing the BlackBerry Enterprise Server (BES).  PIN numbers function similar to the telephone numbers of incoming and outgoing calls, because they indicate origin(s) and destination(s).  PINs can be recorded by pen-trap devices and can be used to identify parties to a communication without revealing the communication's content.

6.   BlackBerry Messenger service allows a BlackBerry user to send a message of unlimited length, to set up a group chat, to transfer files, and to share contacts, videos, photos and music files with other BlackBerry users. When using the BlackBerry Messenger service to communicate, the message is routed within BlackBerry's network infrastructure.  Unlike an e-mail message, which is stored on a network server maintained by the provider, BBM messages are merely routed to a relay server managed by RIM, which does not store the communication, but

4

simply routes the communication to the receiving BlackBerry handheld device as soon as the receiver is online.

7.   A BlackBerry user can access the Internet through the BlackBerry infrastructure network, the cellular carrier associated with a particular BlackBerry device, or a WiFi access point.  A BlackBerry user can use a home wireless router, or a public wireless hotspot Internet data connection to access the Internet through one of BlackBerry's service offerings, such as the BlackBerry Enterprise Server (BES) and/or BlackBerry Internet Server (BIS).  A BlackBerry customer can send and receive emails and instant messages using BlackBerry's Internet Service or by accessing third-party software applications, such as web-based email services, or social networking services.

8.   An Internet email message has its own routing header, in addition to the source and destination information associated with all Internet data packets. The message header of an email contains the message's source and destination(s), expressed as email addresses in "From," "To," "CC" (carbon copy), or "BCC" (blind carbon copy) fields. Multiple destination addresses may be specified in the "To," "CC," and "BCC" fields. The email addresses in an email's message header are like the telephone numbers of both incoming and outgoing calls, because they indicate both origin and destination(s). They can be

recorded by pen-trap devices and can be used to identify parties to a communication without revealing the communication's contents.

9. A BlackBerry subscriber can add up to 10 separate Internet web-based email account addresses to be integrated to a BlackBerry smartphone. Examples of Internet web-based email services include Microsoft Hotmail, Yahoo! Mail, and Google Mail (Gmail). The BlackBerry Internet Service regularly checks the integrated email account, sends the new messages to BlackBerry's BlackBerry infrastructure, and then automatically delivers the email messages to the subscriber's BlackBerry smartphone over the wireless network.

10. Based on information provided to me by a special agent of the Drug Enforcement Administration (the "investigative agency"), I hereby certify that the investigative agency is conducting an ongoing criminal investigation into possible violations of federal criminal laws, including the operation of a continuing criminal enterprise in violation of Title 21, United States Code, Section 848(c), and an international conspiracy to distribute narcotics in violation of 21 U.S.C. §§ 959, 960 and 963, and 18 U.S.C. § 2 ("SUBJECT OFFENSES"), by individuals known and unknown, and that the information likely

to be obtained from a pen register and trap and trace device on the SUBJECT DEVICES is relevant to that investigation.

11.   The SUBJECT DEVICES are believed to be used by: (1) FNU LNU #1 (PIN 33338631); (2) FNU LNU #2 (PIN 7bef9adb); (3) Christian ARANDA (PIN 2BCF446E); (4) FNU LNU #4 (PIN 2C2187D1); (5) FNU LNU #5 (PIN 2928EFE2); (6) FNU LNU #6 (PIN 25AE2671); AND (7) FNU LNU #7 (PIN 7BD69388), who are all subjects of the DEA international narcotics investigation or associates of subjects of the DEA international narcotics investigation.

12.   To further the investigation, investigators need to obtain the dialing, routing, addressing, and signaling information associated with communications sent to or from that BlackBerry device via all electronic communications services operating on the device.

13.   The pen-trap devices sought by this application will collect dialing, routing, addressing, and signaling information associated with each communication to or from the subject device, including, but not limited to, the date, time, and duration of the communication, and the following, without geographic limit:

a.   PINs utilized to send or receive communications;[1]

---

[1] PINs are automatically assigned to a particular BlackBerry

7

    b.    headers of email messages, including the source and destination network addresses, as well as the routes of transmission and size of the messages, but not content located in headers, such as subject lines;[2] and

    c.    the number and size of any attachments to email messages or BB messenger communications.

14.  For the reasons stated above, the United States requests that the Court enter an Order authorizing installation and use of pen-trap devices to record, decode, and/or capture the dialing, routing, addressing, and signaling information described above for each communication to or from the subject device, along with the date, time, and duration of the communication, and the additional particulars specified above, without geographic limit. The United States does not request and does not seek to obtain the contents of any communications, as defined in 18 U.S.C. § 2510(8), pursuant to the proposed Order.

15.  The United States further requests that the Court authorize the foregoing installation and use for a period of sixty days, pursuant to 18 U.S.C. § 3123(c)(1).

---

device by BlackBerry.  The PIN is a hexadecimal, alphanumeric identifier that is hard-coded and permanently assigned to a particular BlackBerry device by BlackBerry.  The BlackBerry user cannot set the PIN.

[2] The header information captured by a pen-trap does not distinguish between recipients who are carbon copied ("cc"), blind carbon copied ("bcc") or who are simply entered in the "to" field by the BlackBerry user.

16.   The United States further requests, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), that the Court order BlackBerry Corp. and any other person or entity providing wire or electronic communication service in the United States whose assistance may facilitate execution of this Order to furnish, upon service of the Order, information, facilities, and technical assistance necessary to install the pen-trap devices, including installation and operation of the pen-trap devices unobtrusively and with minimum disruption of normal service. Any entity providing such assistance shall be reasonably compensated by DEA, pursuant to 18 U.S.C. § 3124(c), for reasonable expenses incurred in providing facilities and assistance in furtherance of this Order.

17.   The United States further requests that the Court order BlackBerry Corp. and any other person or entity whose assistance may facilitate execution of this Order to notify the DEA of any changes relating to services relating to the SUBJECT DEVICES, including changes to subscriber information, and to provide prior notice to the DEA before terminating service to the BlackBerry device.

18.   The United States further requests that the Court order that the DEA and the applicant have access to the information collected by the pen-trap devices as soon as

practicable, twenty-four hours per day, or at such other times as may be acceptable to them, for the duration of the Order.

19.   Finally, pursuant to 18 U.S.C. §§ 3123(d) and 2705(b), the government also requests that the Service Provider, and any other person or entity whose assistance is used to facilitate execution of the Order be ordered not to disclose to the listed subscriber of the telephone, or to any other person (a) the existence of the Order of Authorization; (b) the existence of the Order to Service Provider; and (c) the existence of the pen registers and trap and trace devices to the listed subscribers for the SUBJECT DEVICES, the subscribers of the telephones initiating incoming text messages to or receiving outgoing text messages from the SUBJECT DEVICES, or to any other person, unless and until otherwise ordered by the Court, except that the service provider may disclose this Order to an attorney for service provider for the purpose of receiving legal advice. Any such disclosure might jeopardize this investigation because it would alert the targets to the existence of an investigation and might lead to the destruction and/or concealment of evidence and/or the flight of targets.

20.   No prior request for the relief set forth herein has been made except to the extent set forth above.

21.  The foregoing is affirmed under the penalty of perjury.  <u>See</u> 28 U.S.C. § 1746.

Dated:   Brooklyn, New York
         May 12, 2016

Michael P. Robotti
Assistant United States Attorney
(718) 254-7576

11

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - x
IN THE MATTER OF AN APPLICATION           :
OF THE UNITED STATES OF AMERICA           :      SEALED ORDER
FOR AN ORDER AUTHORIZING THE              :      OF AUTHORIZATION
USE OF A PEN REGISTER AND A               :
TRAP AND TRACE DEVICE                     :      ___ Misc. ___
- - - - - - - - - - - - - - - - - - - x

      This matter comes before the Court pursuant to an application by Assistant United States Attorney Michael P. Robotti, an attorney for the Government as defined by Rule 1(b)(1) of the Federal Rules of Criminal Procedure and a duly-authorized representative of a "governmental entity" under 18 U.S.C. § 2703(c) and (d) requesting an Order pursuant to 18 U.S.C. §§ 3122 and 3123, authorizing for a period of 60 days the installation and use of a pen register and a trap and trace device on: (i) a BlackBerry Device with PIN: 33338631, with no listed subscriber; (ii) a BlackBerry Device with PIN: 7bef9adb, with no listed subscriber; (iii) a BlackBerry Device with PIN: 2BCF446E, with no listed subscriber; (iv) a BlackBerry Device with PIN: 2C2187D1, (v) a BlackBerry Device with PIN: 2928EFE2,(vi) a BlackBerry Device with PIN: 25AE2671, and (vii) a BlackBerry Device with PIN: 7BD69388, with no listed subscriber (collectively, the "SUBJECT DEVICES"), whose wireless

1

telephone service provider is BlackBerry Corporation (the "Service Provider").

UPON REVIEW OF THE APPLICATION, THE COURT HEREBY FINDS THAT, pursuant to 18 U.S.C. § 3123, Applicant has certified that the information likely to be obtained by use of a pen register and a trap and trace device is relevant to an ongoing criminal investigation being conducted by the Drug Enforcement Administration (the "investigative agency") into possible violations of federal criminal laws, including an international conspiracy to distribute narcotics in violation of Title 21, United States Code, Sections 959, 963, 952, 846 and 841, and Title 18, United States Code, Section 2, by individuals both known and unknown, and that the information likely to be obtained from a pen register and trap and trace device on the SUBJECT DEVICES is relevant to that investigation.  The Applicant has certified that the SUBJECT DEVICES are believed to be used by (1) FNU LNU #1 (PIN 33338631); (2) FNU LNU #2 (PIN 7bef9adb); (3) Christian ARANDA (PIN 2BCF446E); (4) FNU LNU #4 (PIN 2C2187D1); (5) FNU LNU #5 (PIN 2928EFE2); (6) FNU LNU #6 (PIN 25AE2671); AND (7) FNU LNU #7 (PIN 7BD69388), who are all subjects of the DEA international narcotics investigation or

2

associates of subjects of the DEA international narcotics
investigation.

IT IS THEREFORE ORDERED, pursuant to 18 U.S.C. § 3123,
that pen-trap devices may be installed and used to record,
decode, and/or capture dialing, routing, addressing, and
signaling information associated with each communication to or
from the subject device, excluding geolocation information and
including only the date and time of the communication, and the
following, without geographic limit:

> a. PINs utilized to send or receive communications;
>
> b. headers of email messages, including the source and
> destination network addresses, as well as the routes
> of transmission and size of the messages, but not
> geolocation data or content located in headers, such
> as subject lines; and
>
> c. the number and size of any attachments to email
> messages or BB messenger communications.

IT IS FURTHER ORDERED, pursuant to 18 U.S.C.
§ 3123(c)(1), that the use and installation of the foregoing is
authorized for sixty days from the date of this Order;

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. §§
3123(b)(2) and 3124(a)-(b), that BlackBerry Corp. and any other
person or entity providing wire or electronic communication
service in the United States whose assistance may, pursuant to

18 U.S.C. § 3123(a), facilitate the execution of this Order shall, upon service of this Order, furnish information, facilities, and technical assistance necessary to install the pen-trap devices, including installation and operation of the pen-trap devices unobtrusively and with minimum disruption of normal service;

IT IS FURTHER ORDERED that the DEA reasonably compensate BlackBerry Corp. and any other person or entity whose assistance facilitates execution of this Order for reasonable expenses incurred in complying with this Order;

IT IS FURTHER ORDERED that BlackBerry Corp. and any other person or entity whose assistance may facilitate execution of this Order notify the DEA of any changes relating to services relating to the SUBJECT DEVICES, including changes to subscriber information, and to provide prior notice to the DEA before terminating service to the BlackBerry device;

IT IS FURTHER ORDERED that the DEA and the applicant have access to the information collected by the pen-trap devices as soon as practicable, twenty-four hours per day, or at such other times as may be acceptable to the DEA, for the duration of the Order;

IT IS FURTHER ORDERED, pursuant to 18 U.S.C.
§ 3123(d)(2), that BlackBerry Corp. and any other person or
entity whose assistance facilitates execution of this Order, and
their agents and employees, shall not disclose in any manner,
directly or indirectly, by any action or inaction, the existence
of the application and this Order, the pen-trap devices, or the
investigation to any person, except as necessary to effectuate
this Order or to an attorney for service provider for the
purpose of receiving legal advice, unless and until otherwise
ordered by the Court;

IT IS FURTHER ORDERED that the Clerk of the Court
shall provide the United States Attorney's Office with three
certified copies of this application and Order, and shall
provide copies of this Order to the DEA and BlackBerry Corp.
upon request;

5

IT IS FURTHER ORDERED that the application and this

Order are sealed until otherwise ordered by the Court, pursuant

to 18 U.S.C. § 3123(d)(1).


Dated: Brooklyn, New York
       May 12, 2016


                              S/ James Orenstein
                              _____
                              THE HONORABLE JAMES ORENSTEIN
                              UNITED STATES MAGISTRATE JUDGE
                              EASTERN DISTRICT OF NEW YORK

6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - x
IN THE MATTER OF AN APPLICATION         :
OF THE UNITED STATES OF AMERICA         :      SEALED ORDER
FOR AN ORDER AUTHORIZING THE            :      TO SERVICE PROVIDER
USE OF A PEN REGISTER AND               :
A TRAP AND TRACE DEVICE                 :      __ Misc. ____
- - - - - - - - - - - - - - - - - - x

WHEREAS this Court has, upon the application of the
United States of America, entered an Order pursuant to 18 U.S.C.
§§ 3121 et seq., authorizing the use of a pen register and a
trap and trace device for a period of 60 days on: (i) a
BlackBerry Device with PIN: 33338631, with no listed subscriber;
(ii) a BlackBerry Device with PIN: 7bef9adb, with no listed
subscriber; (iii) a BlackBerry Device with PIN: 2BCF446E, with
no listed subscriber; (iv) a BlackBerry Device with PIN:
2C2187D1, (v) a BlackBerry Device with PIN: 2928EFE2,(vi) a
BlackBerry Device with PIN: 25AE2671, and (vii) a BlackBerry
Device with PIN: 7BD69388, with no listed subscriber
(collectively, the "SUBJECT DEVICES") whose wireless telephone
service provider is BlackBerry Corp. (the "Service Provider") in
connection with an ongoing criminal investigation concerning
targets (1) FNU LNU #1 (PIN 33338631); (2) FNU LNU #2 (PIN
7bef9adb); (3) Christian ARANDA (PIN 2BCF446E); (4) FNU LNU #4

1

(PIN 2C2187D1); (5) FNU LNU #5 (PIN 2928EFE2); (6) FNU LNU #6 (PIN 25AE2671); AND (7) FNU LNU #7 (PIN 7BD69388), who are all subjects of the DEA international narcotics investigation or associates of subjects of the DEA international narcotics investigation.

Now therefore, it is hereby:

1.   ORDERED, pursuant to 18 U.S.C. § 3123, that special agents of the Drug Enforcement Administration (the "DEA" or "investigative agency") may install, or cause to be installed, and use a pen register to record or decode dialing, routing, addressing, or signaling information transmitted from the SUBJECT DEVICES to record the date and time of such dialings or transmissions for incoming or outgoing text messages for a period of 60 days, beginning at any time within 14 days from the date of this Order.

2.   IT IS THEREFORE ORDERED, pursuant to 18 U.S.C. § 3123, that pen-trap devices may be installed and used to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the SUBJECT DEVICES, excluding geolocation information and including only the date and time of the communication, and the following, without geographic limit:

a. PINs utilized to send or receive communications;

2

b. headers of email messages, including the source and destination network addresses, as well as the routes of transmission and size of the messages, but not geolocation data or content located in headers, such as subject lines; and

c. the number and size of any attachments to email messages or BB messenger communications.

3.   IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 3123(c)(1), that the use and installation of the foregoing is authorized for sixty days from the date of this Order;

4.   IT IS FURTHER ORDERED, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), that BlackBerry Corp. and any other person or entity providing wire or electronic communication service in the United States whose assistance may, pursuant to 18 U.S.C. § 3123(a), facilitate the execution of this Order shall, upon service of this Order, furnish information, facilities, and technical assistance necessary to install the pen-trap devices, including installation and operation of the pen-trap devices unobtrusively and with minimum disruption of normal service;

5.   IT IS FURTHER ORDERED that the DEA reasonably compensate BlackBerry Corp. and any other person or entity whose assistance facilitates execution of this Order for reasonable expenses incurred in complying with this Order;

3

6.    IT IS FURTHER ORDERED that BlackBerry Corp. and
any other person or entity whose assistance may facilitate
execution of this Order notify the DEA of any changes relating
to services relating to the SUBJECT DEVICES, including changes
to subscriber information, and to provide prior notice to the
DEA before terminating service to the BlackBerry device;

7.    IT IS FURTHER ORDERED that the DEA and the
applicant have access to the information collected by the pen-
trap devices as soon as practicable, twenty-four hours per day,
or at such other times as may be acceptable to the DEA, for the
duration of the Order;

8.    IT IS FURTHER ORDERED, pursuant to 18 U.S.C.
§ 3123(d)(2), that BlackBerry Corp. and any other person or
entity whose assistance facilitates execution of this Order, and
their agents and employees, shall not disclose in any manner,
directly or indirectly, by any action or inaction, the existence
of the application and this Order, the pen-trap devices, or the
investigation to any person, except as necessary to effectuate
this Order, unless and until otherwise ordered by the Court;

9.    IT IS FURTHER ORDERED that the Service Provider
and any other person or entity that provides technical
assistance in executing this Order be compensated by the

4

investigative agency for reasonable expenses directly incurred in providing such assistance.

10.  IT IS FURTHER ORDERED that this Order shall be sealed until *(8/12/16 unless)* otherwise ordered by the Court, except that copies may be retained by the United States Attorney's Office, the investigative agency, the service provider and any other person or entity whose assistance is used to execute this Order.

11.  IT IS FURTHER ORDERED, finally, that unless and until otherwise ordered by the Court, the service provider and its representatives, agents and employees, and any other person or entity providing technical assistance in executing this Order shall not disclose until further notice in any manner, directly or indirectly, by any action or inaction: (a) the existence of the Order of Authorization; (b) the existence of the Order to the Service Provider; and (c) the existence of the pen register and trap and trace device to the listed subscribers for the SUBJECT DEVICES, the subscribers of the telephones initiating incoming text messages to or receiving outgoing text messages from the SUBJECT DEVICES, or to any other person, except that the service

5

provider may disclose this Order to an attorney for service

provider for the purpose of receiving legal advice.

Dated:      Brooklyn, New York
            May 12, 2016


                              S/ James Orenstein
                              ─────────────────────────
                              THE HONORABLE JAMES ORENSTEIN
                              UNITED STATES MAGISTRATE JUDGE
                              EASTERN DISTRICT OF NEW YORK

6